IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

JAVIER CORTES-MARTINEZ

**Plaintiff,**

v.

JOYNETTE TORRES-LA COURT, ET AL

**Defendants.**

Civil No. 25-1269 (RAM)

## OPINION AND ORDER

RAÚL M. ARIAS-MARXUACH, United States District Judge.

Pending before the Court is Defendants' *Motion to Dismiss* ("*Motion*"). (Docket No. 21). For the reasons set forth below, the Court hereby **GRANTS** Defendants' *Motion*.

### I.    FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff Javier Cortes-Martinez ("Plaintiff" or "Cortes") filed his *Complaint* against Joynette Torres-La Court ("Torres") in her official capacity as Director of the Puerto Rico Criminal Justice Information System ("SIJC" for its Spanish acronym), Joseph Gonzalez-Falcon ("Gonzalez") in his official capacity as Commissioner of the Puerto Rico Police Bureau, and Janet Parra-Mercado ("Parra") in her official capacity as the then-nominee for Secretary of Justice of Puerto Rico (collectively, "Defendants") on May 16, 2025. (Docket No. 1). On August 7, 2025, Plaintiff moved to substitute Lourdes Gómez-Torres ("Gómez") for Parra, given that

the former had replaced the latter as the Secretary of Justice. (Docket No. 13). The Court granted this motion. (Docket No. 14).

Succinctly stated, Plaintiff's lawsuit is a Section 1983 civil rights challenge to the constitutionality of Puerto Rico's Sex Offender Registry created by Puerto Rico Law 266 of September 9, 2004, P.R. Laws Ann. tit. 4, §536 ("Law 266"). (Docket No. 1 at 4). Plaintiff attacks Law 266's alleged lack of procedural safeguards and overbroad public disclosure obligations that exceed those of the federal Sex Offender Registration and Notification Act ("SORNA"). Id.

In the *Complaint*, Plaintiff asserts that Defendants' use of Law 266 against him violated his First and Fourteenth Amendment rights to free speech and procedural due process. Id. As a threshold matter, Plaintiff acknowledges he cannot challenge his underlying obligation to register as a sex offender because such a case would be barred by Heck v. Humphrey, 512 U.S. 477 (1994), as an impermissible collateral attack on the conditions of his federal conviction for the possession of child pornography. Id. at 5. Therefore, he contests only the Puerto Rico-specific public messaging employed by Defendants to spread information about sex offenders, along with the tier classification scheme as applied to him by Puerto Rico law. Id.

Plaintiff argues that Defendants' public messaging--through the Registry website, newspapers publications, social media posts,

and educational campaigns aimed at expanding public awareness of the identity of sex offenders--transformed the personal information he provided to the Registry into compelled speech. Id. at 30, 43-47. Plaintiff alleges that he lost his job and has had trouble reintegrating into society because of Defendants' public dissemination of his sex offender status. Id. at 33-36.

Plaintiff's procedural due process claim centers on Defendants' classification of Plaintiff as a Tier II sex offender. Id. at 47-50. He alleges that Law 266 requires both possession *and* distribution of child pornography for categorization into Tier II, whereas he was only convicted of possession. Id. Despite his best efforts at bringing this alleged misclassification to the attention of his probationary overseers, Plaintiff claims he was not afforded a hearing through which he could contest the burdens on liberty that come with a higher sex offender classification. Id. at 49.

On September 23, 2025, the Puerto Rico Department of Justice ("PRDOJ") filed the pending *Motion to Dismiss* on behalf of all Defendants, seeking the dismissal of the case in its entirety. (Docket No. 21). Defendants argue that: (1) Plaintiff's lawsuit is a disguised attempt to evade his statutory obligation to register as a sex offender under SORNA; (2) Plaintiff lacks standing to bring the suit against Defendants; (3) Defendants did not violate

either the First or the Fourteenth Amendments by implementing Law 266; and (4) that the suit is barred by Heck. Id. at 1-11.

Defendants contend that Plaintiff has no standing because his injury is not traceable to Defendants' conduct, as SORNA independently compels his inclusion on a sex offender registry and because it was private actors who caused Plaintiff to be fired. Id. at 5-6. Moreover, Defendants aver that Plaintiff's injuries are not redressable, given his independent obligation to register under federal law. Id. at 6-7.

Replying to Plaintiff's claim that he is being compelled to speak, Defendants argue that registry disclosures are factual and not ideological. Id. at 7-8. Moreover, they assert that the public messaging campaign promoted by Defendants is government speech and, therefore, cannot be deemed compelled speech. Id. Replying to Plaintiff's claim that he was not given a hearing prior to a deprivation of liberty, Defendants argue that adequate state remedies exist in the form of review of sex offender tier classifications in the courts of Puerto Rico. Id. at 10. Defendants also maintain that no deprivation occurred in the first place since he was correctly designated as a Tier II offender. Id. at 10-11. Lastly, characterizing Plaintiff's lawsuit as geared solely toward orchestrating his removal from the registry, Defendants aver that it is barred by the Heck doctrine. Id. at 11.

On October 7, 2025, Plaintiff filed a *Response to Motion to Dismiss*. (Docket No. 23). Therein, Plaintiff insists he has standing since his claims are limited to the actions and omissions of Defendants--including Plaintiff's classification as a Tier II offender in Puerto Rico and the public messaging used by Defendants to propagate the Registry--and do not pertain to his federal SORNA obligations. Id. at 2-3. He alleges that the "campaign" conducted by Defendants involves his own compelled speech and not just government speech because: the Registry transmits noncommercial speech; First Amendment protections extend even to factual statements; the government is regulating his speech and not his conduct; and Defendants' messaging forces Plaintiff to personally advocate a viewpoint he does not hold. Id. at 3-9. Plaintiff argues that Law 266 fails strict scrutiny because there is no compelling government interest present and the Registry is not narrowly tailored. Id. at 10-11. Lastly, Plaintiff repeats that Heck should not serve as a bar to this action, he was incorrectly classified as a Tier II offender, and state court review is not an appropriate remedy without Fourteenth Amendment-compliant hearings. Id. at 12-13.

On October 21, 2025, Defendants filed a *Reply to Plaintiff's Response to Motion to Dismiss* ("*Reply*"). (Docket No. 26). Defendants assert that Plaintiff is attempting to amend the *Complaint* via improperly raised First Amendment theories in the

*Response to Motion to Dismiss*. Id. at 2-3. Nevertheless, Defendants contend that these claims are meritless, since sex offender registries have consistently been held not to be compelled speech. Id. at 3-7. Defendants insist that hearings are available for review of sex offender tier classifications. Id. at 7. Lastly, they repeat their assertions that Plaintiff does not have standing and that his suit is barred by Heck. Id. at 7-8.

On November 4, 2025, Plaintiff filed a *Sur-Reply*. (Docket No. 29). Therein, he asserts his responses to some of Defendants' claims in the *Reply*: he insists he specifically identified the statutory provisions that compel his speech; argues that an "essential operations of government" theory cannot bar First Amendment review here; rejects what he alleges is Defendants' new articulation of governmental purpose; and avers that compelled speech doctrine goes beyond ideological and religious expressions. Id. at 2-6.

## II.  LEGAL STANDARD

When ruling on a Fed. R. Civ. P. 12(b)(6) motion to dismiss, "[t]he sole inquiry ... is whether, construing the well-pleaded facts of the complaint in the light most favorable to the plaintiffs, the complaint states a claim for which relief can be granted." Ocasio-Hernandez v. Fortuno-Burset, 640 F.3d 1, 7 (1st Cir. 2011). The Court must first "isolate and ignore statements in the complaint that simply offer legal labels and conclusions or

merely rehash cause-of-action elements." <u>Schatz v. Republican State Leadership Committee</u>, 669 F.3d 50, 55 (1st Cir. 2012) (citations omitted). Then, the Court takes "the complaint's well-pled (*i.e.*, non-conclusory, non-speculative) facts as true, drawing all reasonable inferences in the pleader's favor," to determine "if they plausibly narrate a claim for relief." <u>Id.</u> (citations omitted). One of the grounds allowing a complaint to be dismissed under Fed. R. Civ. P. 12(b)(6) is for "failure to state a claim upon which relief can be granted." When evaluating a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), Courts may consider: "(a) 'implications from documents' attached to or fairly 'incorporated into the complaint,' (b) 'facts' susceptible to 'judicial notice,' and (c) 'concessions' in plaintiff's 'response to the motion to dismiss.'" <u>Schatz</u>, 669 F.3d at 55-56 (quoting <u>Arturet-Vélez v. R.J. Reynolds Tobacco Co.</u>, 429 F.3d 10, 13 n.2 (1st Cir. 2005)).

### III. DISCUSSION

Defendants request the Court to dismiss this action on a variety of grounds. *See* (Docket No. 21). The Court addresses each in turn below.

### A. <u>Standing</u>

#### a. Applicable law

"Article III confines the federal judicial power to the resolution of 'Cases' and 'Controversies.'" <u>TransUnion LLC v.</u>

*Ramirez*, 141 S. Ct. 2190, 2203 (2021). To establish Article III standing, a plaintiff must have: (1) suffered an injury-in-fact; (2) that is fairly traceable to defendant's challenged actions; and (3) that is likely redressable by a favorable decision. *See* Lujan v. Defenders of Wildlife, 504 U.S. 555, 560-61 (1992).

The Supreme Court has defined an "injury-in-fact" as "an invasion of a legally protected interest which is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical." Id. (citations and quotations omitted). For an injury to be concrete, "it must actually exist." Spokeo, Inc. v. Robins, 578 U.S. 330, 340 (2016).

The causation between a defendant's conduct and plaintiff's injury-in-fact cannot be too attenuated, too speculative, or the result of some third party not before the court. Allen v. Wright, 468 U.S. 737, 757-58 (1984) (deeming plaintiffs not to have standing where their injuries "result[ed] from the independent action of some third party not before the court" and concluding that the "line of causation" was "attenuated at best") (quoting Simon v. E. Ky. Welfare Rights Org., 426 U.S. 26, 42 (1976)); Lujan, 504 U.S. at 560 (requiring "a causal connection between the injury and the conduct complained of"); Katz v. Pershing, LLC, 672 F.3d 64, 71-72 (1st Cir. 2012) (plaintiff must demonstrate a "sufficiently direct causal connection between the challenged action and the identified harm" caused by defendants, not a third

party); <u>Donahue v. City of Boston</u>, 304 F.3d 110, 115 (1st Cir.
2002) (causal connection "cannot be overly attenuated").

   The injury must also be remediable through a federal court
decision and the prospect of relief must not be too remote. <u>Lujan</u>,
504 U.S. at 561 ("it must be 'likely,' as opposed to merely
'speculative,' that the injury will be 'redressed by a favorable
decision'") (quoting <u>Simon</u>, 426 U.S. at 38, 43); <u>Antilles Cement
Corp. v. Fortuño</u>, 670 F.3d 310, 318 (1st Cir. 2012) (plaintiff
"need only show that a favorable ruling could potentially lessen
its injury; it need not definitively demonstrate that a victory
would completely remedy the harm").

### b. Plaintiff has standing in this case

   PRDOJ's position that Plaintiff lacks standing hinges on two
propositions: (1) that there is no causation between Defendants'
actions and Plaintiff's reputational harm, as SORNA independently
demands that Plaintiff register as a sex offender; and (2) that
Plaintiff's injuries are not redressable, because even if Law 266
was deemed unconstitutional, he would have to comply with federal
registration requirements. <u>Id.</u> at 4–7.

   These arguments mischaracterize Plaintiff's contemplated
relief. He does not solely seek to avoid inclusion in a sex
offender registry. Instead, Plaintiff alleges numerous facts about
actions taken by Puerto Rico officials pursuant to Law 266 that
depart from the edicts enacted by Congress into SORNA. Plaintiff

states clearly that he is "focus[ing] this action solely on the unconstitutional nature of his Tier Classification and the public dissemination employed by Defendants under Puerto Rico law" and avoiding for now "any challenge to the registration requirement itself." (Docket No. 1 at 5).

Plaintiff's allegations about actions taken under Law 266's aegis include that: Puerto Rico officials conduct "campaigns" beyond what SORNA requires to spread information about sex offenders; the "Conócelos" ("Get to Know Them") informational campaign, in particular, characterized Plaintiff as a public safety threat; Law 266 "requires SIJC to arrange for the Registry's publication in a general circulation newspaper" annually; Registry and SIJC resources couple information about sex offenders with material framing them as dangers to the community; there is not an explicitly furnished administrative procedure for challenging offender tier classifications; and that probation agents in Puerto Rico misclassified Plaintiff under Puerto Rico's own sex offender categorization rubric. (Docket No. 1 at 8-10, 25, 27-33, 44).

It is clear from this recital of Plaintiff's claims that many, if not nearly all, concern policy choices made by Puerto Rico decisionmakers who Plaintiff alleges work under Defendants in their official capacity. Hence, SORNA is not the sole inflicter of Plaintiff's injury-in-fact, and the causal connection between the Puerto Rico actors' decisions and Plaintiff's reputational harm is

"sufficiently direct." Katz, 672 F.3d at 71-72 (plaintiff must demonstrate a "sufficiently direct causal connection between the challenged action and the identified harm" caused by defendants, not a third party).

The same insight resolves Defendants' redressability concerns: while it is true that "[e]njoining Puerto Rico officials from enforcing the registry or his tier classification, would not relieve Plaintiff from his duty to register under SORNA," (Docket No. 21 at 6), court-mandated relief could certainly redress the free speech and procedural due process violations that Plaintiff alleges are caused by aspects of Puerto Rico's efforts to combat sex offender recidivism. Plaintiff meets his burden at this pleading stage of "show[ing] that a favorable ruling could potentially lessen [his] injury"; he "need not definitively demonstrate that a victory would completely remedy the harm." Antilles, 670 F.3d at 318.

**B. Section 1983**

    **a. Applicable law**

42 U.S.C. § 1983 ("Section 1983") allows individuals to sue state and local government officials who deprive them of "any rights, privileges, or immunities secured by the Constitution and laws." 42 U.S.C. § 1983. It "is not itself a source of substantive rights," but merely provides "a method for vindicating federal rights elsewhere conferred." Graham v. Connor, 490 U.S. 386, 393-

94 (1989) (quoting Baker v. McCollan, 443 U.S. 137, 144 n.3 (1979)). Section 1983 provides redress for constitutional violations by state and local government actors. It is worth noting that "[f]or purposes of section 1983, Puerto Rico is the functional equivalent of a state," and Puerto Rico officials are treated like state officials. *See* Cruz-Arce v. Mgmt. Admin. Servs. Corp., 19 F.4th 538, 541 n.1 (1st Cir. 2021); 42 U.S.C. § 1983 (creating a cause of action allowing individuals to sue for violations of federal rights "under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory").

However, Section 1983 cannot be used to collaterally attack the validity of a previously adjudicated criminal case or its conditions. In Heck, the Supreme Court held that when "a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence," the claim in such a case cannot proceed until "the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus." 512 U.S. at 486-87. Moreover, the Heck doctrine prevents plaintiffs from circumventing habeas exhaustion requirements or attempting to undo valid state court criminal judgments.

### b. Plaintiff's suit is not barred by the <u>Heck</u> doctrine

Defendants make the case that Plaintiff should not be allowed to bring this case because it constitutes an impermissible collateral attack on his federal conviction for the possession of child pornography. (Docket No. 21 at 11-12). Once more training their sights on what they allege is Plaintiff's sole objective of having his name removed from the Registry, Defendants affirm that ruling in favor of Plaintiff would necessarily negate the conditions of his release (*i.e.*, his obligation to register as a sex offender). <u>Id.</u>

As above, this argument mischaracterizes the relief Plaintiff seeks. In fact, Plaintiff's *Complaint* explicitly accounts for <u>Heck</u>, acknowledging the decision, conceding that "Plaintiff is likely barred by *Heck* from bringing [a claim challenging the fundamental registration requirement]," and thus circumscribing his claims to "solely. . .the unconstitutional nature of his Tier Classification and the public dissemination employed by Defendants under Puerto Rico law." (Docket No. 1 at 5). Plaintiff has numerous claims limited to the conduct of local officials. <u>Id.</u> at 8-10, 25, 27-33, 44. Plaintiff meets his burden at this stage by alleging facts about the effects of Puerto Rico decisions not mandated by the conditions of his prior conviction.

C. **Compelled speech and government speech**

    a. **Applicable law**

The First Amendment provides that "Congress shall make no law. . .abridging the freedom of speech." U.S. Const. amend I. This "free speech clause" of the First Amendment "fully applies" to Puerto Rico. *See* El Vocero de Puerto Rico (Caribbean Intern. News Corp.) v. Puerto Rico, 508 U.S. 147, 148 n.1 (1993).

The First Amendment protects not only the right to speak but also the right to refrain from speaking. As stated by Justice Robert Jackson in West Virginia State Board of Education v. Barnette, "if there is any fixed star in our constitutional constellation, it is that no official, high or petty, can prescribe what shall be orthodox. . .or force citizens to confess by word or act their faith therein." 319 U.S. 624, 642 (1943). The government cannot compel an individual "to utter what is not in his mind." Id. at 634.

While this compelled speech doctrine proscribes the government from forcing people to carry its message, *see* Wooley v. Maynard, 430 U.S. 705, 714-15 (1977) (forbidding a state from requiring drivers to display a license plate motto with which they disagreed), markedly different rules apply when the government itself is doing the talking. "When government speaks, it is not barred by the Free Speech Clause from determining the content of what it says," and that freedom "reflects the fact that it is the

democratic electoral process that first and foremost provides a check on government speech." <u>Walker v. Tex. Div., Sons of Confederate Veterans, Inc.</u>, 576 U.S. 200, 207 (2015).

Recent Supreme Court decisions have reiterated that "[w]hen the government wishes to. . .speak for the community, to formulate policies, or to implement programs, it naturally chooses what to say and what not to say." <u>Shurtleff v. City of Bos.</u>, 596 U.S. 243, 251 (2022). <u>Shurtleff</u> instructs courts to examine "the history of the expression at issue; the public's likely perception as to who (the government or a private person) is speaking; and the extent to which the government has actively shaped or controlled the expression" to determine whether the speech at issue is government speech or is instead regulation of private speech. <u>Id.</u> at 252.

### b. Plaintiff does not adequately plead that his speech was compelled by Law 266

Plaintiff argues that Puerto Rico officials' Sex Offender Registry-related public messaging decisions transmogrify his provision of personal information to the Registry into compelled speech. (Docket No. 1 at 30, 43-47). Conversely, Defendants aver that this allegedly unconstitutional public messaging is government speech to which the First Amendment does not apply. (Docket No. 21 at 7-8).

As a threshold matter, the Court notes that SORNA sets the minimum national standards; put differently, it is a floor, not a

ceiling. *See, e.g.*, <u>United States v. Del Valle-Cruz</u>, 785 F.3d 48, 55 (1st Cir. 2015) ("According to the Attorney General, SORNA 'establishes minimum national standards, setting a floor, not a ceiling' for the individual states. Jurisdictions may choose to exceed the guidelines in some areas, including the duration of registration, but they must meet the minimum standards to comply with SORNA") (citations omitted). Hence, Puerto Rico is permitted to impose more frequent registration requirements and provide for broader public disclosures than those enacted by SORNA. <u>Id.</u>

Defendants' public messaging pursuant to Law 266 constitutes government speech under <u>Shurtleff</u>. 596 U.S. at 252. Disclosure of sex offender information has historically been a public safety function of government. *See, e.g.*, <u>Smith v. Doe</u>, 538 U.S. 84, 90-105 (2003). Messaging from Puerto Rico government agencies in newspaper publications and official social media posts would be perceived by reasonable observers as messages from the Commonwealth, not from Plaintiff. Lastly, given that governmental actors and agencies are crafting the public dissemination Plaintiff challenges here, the government has maintained the control over the expression required for it to be deemed government speech under <u>Shurtleff</u>. 596 U.S. at 252.

The First Circuit has not opined on whether broad governmental campaigns disclosing sex offender information constitute compelled speech. However, circuit and district courts across the United

States have repeatedly rejected compelled speech-based claims
seeking to prevent authorities from truthfully disclosing sex
offender status to the public. A few examples follow. In United
States v. Arnold, the Fifth Circuit rejected a First Amendment
challenge to SORNA itself. 740 F.3d 1032, 1035 (5th Cir. 2014).
Recognizing the public safety impetus behind Congress' decision to
enact SORNA, the Arnold court held that sex offender registry
requirements fall under the "essential operations of government"
exception to compelled speech protections. Id. (quoting United
States v. Sindel, 53 F.3d 874, 878 (8th Cir. 1995)) ("[w]hen the
government, to protect the public, requires sex offenders to
register their residence, it conducts an 'essential operation[] of
[the] government,' just as it does when it requires individuals to
disclose information for tax collection"). Similarly, in Cutshall
v. Sundquist, the Sixth Circuit rejected constitutional claims
brought by an offender challenging Tennessee's pre-SORNA Sex
Offender Registration and Monitoring Act--which provided for broad
public disclosure of offender information--declaring that the
plaintiff had "no constitutional right to keep his registry
information from being disclosed." 193 F.3d 466, 481 (6th Cir.
1999). District courts elsewhere have followed suit. See, e.g.,
Cornelio v. Rosado, 2025 WL 2771677, at *5 (N.D.N.Y. 2025) (quoting
Medina v. Cuomo, 2015 WL 13744627, at *10 (N.D.N.Y. 2015)) ("even
if Plaintiff could adequately plead that providing this type of

information to the state constituted compelled speech, the claim still fails because this Court has previously adopted holdings from the Fifth and Eighth Circuits finding that 'there is no right to refrain from speaking when essential operations of government require it for the preservation of an orderly society as in the case of compulsion to give evidence in court'").[1]

The Court agrees with these persuasive authorities from the Fifth, Sixth, and Eight Circuits. These out-of-circuit opinions confirm that the compelled speech doctrine affords sex offenders no succor in preventing the government itself from disseminating truthful information in the cause of public safety.

## D. **Procedural due process**

### a. Applicable law

The Due Process clause of the Fourteenth Amendment "prohibits a state from depriving any person of 'life, liberty, or property, without due process of law,'" and has both a substantive and a procedural component. González-Fuentes v. Molina, 607 F.3d 864, 879 (1st Cir. 2010) (quoting U.S Const. amend. XVI, § 1).

---

[1] Some federal and state courts in the United States have deemed other kinds of sex offender regulations to be compelling speech, but always in the "moving billboard" scenario where the government forces the *individual* to display a message indicating their sex offender status, as opposed to a *government*'s independent publicity campaign. *See, e.g.*, McClendon v. Long, 22 F.4th 1330 (11th Cir. 2022) (enjoining local sheriffs from planting signs in sex offenders' front yards indicating their sex offender status prior to Halloween); State v. Hill, 341 So. 3d 539 (La. 2020) (striking down a requirement that sex offenders carry a special state ID card emblazoned with the phrase "SEX OFFENDER" in block letters).

Section 1983 procedural due process claims require courts to determine if plaintiffs were deprived of a liberty or property interest protected by the United States Constitution and, if so, whether the procedures causing the deprivation "were constitutionally sufficient." González-Fuentes, 607 F.3d at 886 (citation omitted). When evaluating the appropriateness of the procedures employed, courts "balanc[e] a number of factors, including the nature of the private and public interests involved; the risk of erroneous deprivation accruing under the procedures used by the state; and the probable benefit of demanding additional procedural safeguards." Aponte-Rosario v. Acevedo-Vila, 617 F.3d 1, 9 (1st Cir. 2010) (quotation omitted).

To demonstrate the lack of constitutionally sufficient process when deprivation occurs through state action, plaintiffs must plead allegations concerning the absence of constitutionally adequate state remedies. *See* Rumford Pharmacy, Inc. v. City of East Providence, 970 F.2d 996, 999 (1st Cir. 1992) (quoting Roy v. City of Augusta, Me., 712 F.2d 1517, 1523 (1st Cir. 1983)) ("[i]f the federal courts were to entertain civil rights complaints based on procedural deprivations for which adequate state remedies exist, 'every disgruntled applicant could move [its procedural grievances] into the federal courts ...[,] any meaningful separation between federal and state jurisdiction would cease to hold and forum shopping would become the order of the day'");

Amsden v. Moran, 904 F.2d 748, 756 (1st Cir. 1990) ("[t]o be constitutionally sufficient, state remedies need neither be coterminous with potential federal remedies nor prove successful in the end").

In reviewing procedural due process challenges to sex offender registries, the Supreme Court has clarified that when a sex offender categorization turns on "an offender's conviction alone" and no other factors are at play in the classification rubric, a separate hearing is not required. Connecticut Dep't of Pub. Safety v. Doe, 538 U.S. 1, 7 (2003). In such cases, "due process does not require the opportunity to prove a fact that is not material to the State's statutory scheme." Id. at 4.

### b. Plaintiff does not adequately plead that his procedural due process rights were violated by Law 266

Plaintiff brings a procedural due process challenge to Law 266 as applied to him, based on his alleged misclassification as a Tier II offender and the alleged lack of available state remedies. (Docket No. 1 at 47-50). Courts reviewing Section 1983 due process claims examine: (1) whether the plaintiff was deprived of a protected liberty or property interest, and (2) whether the procedures causing the deprivation "were constitutionally sufficient." González-Fuentes, 607 F.3d at 886 (citation omitted). The Court finds that (1) Plaintiff was correctly classified as a Tier II sex offender and thus was not deprived of a protected

liberty interest, and (2) Plaintiff did not adequately plead the absence of constitutionally sufficient state remedies.

### 1. *Plaintiff was correctly classified and thus was not deprived of a protected liberty interest*

Plaintiff claims he should be classified only as a Tier I sex offender. (Docket No. 1 at 47-50). He avers that, based on the Spanish version of Law 266, convictions for both possession *and* distribution of child pornography are required for Tier II classification, whereas he was only convicted of possession. Id. The Court does not find this persuasive for two reasons.

First, the English version of Law 266 explicitly mandates Tier II classification for all offenders convicted of "possession *or* distribution of child pornography." P.R. Laws Ann. tit. 4, § 536(9)(b) (emphasis added). Plaintiff's own *Response to Motion to Dismiss* reverts to this phrasing, acknowledging that Tier II includes all offenders who participate in the "production or distribution of child pornography." (Docket No. 23 at 3 n.1) (emphasis in original). The disjunctive is used, not the conjunctive.

Second, even crediting Plaintiff's argument that the Spanish rendition of this statute (requiring "posesión y distribución de pornografía infantil") could be translated as "possession *and* distribution of child pornography," P.R. Laws Ann. tit. 4, § 536(9)(b) (emphasis added), it is evident from the statute's

structure and the phrasing of its other provisions that the Puerto Rico legislature intended for *either* production or distribution to qualify an offender for Tier II status. Under the whole-text canon, statutes "should not be read as a series of unrelated and isolated provisions." Gustafson v. Alloyd Co., 513 U.S. 561, 570-71 (1995); *see also* Antonin Scalia and Bryan A. Garner, Reading Law: The Interpretation of Legal Texts 167-69 (1st ed. 2012) (discussing the whole-text canon and calling its neglect the most common interpretive fault). The anti-surplusage canon teaches that "courts generally ought not to interpret statutes in a way that renders words or phrases either meaningless or superfluous." City of Providence v. Barr, 954 F.3d 23, 37 (1st Cir. 2020); *see also* Scalia & Garner, Reading Law at 174 ("The surplusage canon holds that it is no more the court's function to revise by subtraction than by addition"). Lastly, the Supreme Court has shed light on this precise dilemma, stating that "[i]n the construction of statutes, it is the duty of the court to ascertain the clear intention of the legislature. In order to do this, courts are often compelled to construe 'or' as meaning 'and,' and again 'and' as meaning 'or.'" United States v. Fisk, 70 U.S. 445, 447 (1866); *see also* Scalia & Garner, Reading Law at 116 ("*And* joins a conjunctive list, *or* a disjunctive list--but with negatives, plurals, and various specific wordings there are nuances").

While § 536(9)(b)'s Spanish may not be the most artfully constructed, this Court's reading is the appropriate one. This is so firstly because neither the possession nor the distribution of child pornography are included in the enumerated Tier I violations. *See* P.R. Laws Ann. tit. 4, § 536(9)(a)-(g). Adhering to Plaintiff's interpretation would lead to the absurd result of allowing him to escape the sex offender categorizations altogether. Moreover, the Spanish word "y," which Plaintiff translates to "and," carries an evidently disjunctive meaning in other portions of § 536(9)(b). For instance, each of the offenses listed in the phrase "[l]ewd acts, pandering, ruffianism, and human trafficking" are not included in the enumerated Tier I violations, *see* P.R. Laws Ann. tit. 4, § 536(9)(a)-(g), and so the commission of any of them seems intended by the Puerto Rico legislature to qualify the offender for Tier II status. The same logic applies to the phrase with which Plaintiff takes umbrage--a conviction for the offense of either child pornography possession or child pornography distribution would be sufficient for Tier II status under P.R. Laws Ann. tit. 4, § 536(9)(b).

### 2. *Plaintiff did not adequately plead the absence of constitutionally sufficient remedies*

Plaintiff then claims that Puerto Rico does not provide hearings for registrants seeking to challenge their tier

classifications. (Docket No. 1 at 49). The Court finds this, too, unpersuasive.

First, it is the local courts of Puerto Rico, not this Court, that possess general jurisdiction. *See, e.g.*, Tartak v. Del Palacio, 2010 WL 3960572, at *6, n.2 (D.P.R. 2010) (explaining that the Puerto Rico Superior Court, a court of first instance, is the "court of 'general jurisdiction'" of Puerto Rico); P.R. Laws Ann. tit. 4, § 25(a). Plaintiff has not identified any statute precluding Puerto Rico courts from scrutinizing sex offender status; rather, it appears that they are readily able to do so. Plaintiff's own *Complaint* admits that he was told by his probationary agents that he could apply for a modification of his tier classification with Puerto Rico courts or PRDOJ. (Docket No. 1 at 33).

Second, Plaintiff's demand for a separate "statutory or administrative" scheme for sex offender classification review, *see* (Docket No. 23 at 12), is inapposite. Supreme Court precedent forecloses this request. In reviewing a procedural due process challenge to a sex offender registry, the Supreme Court has clarified that when the categorization rubric turns on "an offender's conviction alone," a standalone hearing is unnecessary. Connecticut Dep't, 538 U.S. at 7. As outlined in the above discussion, the only factor relevant to Plaintiff's categorization under the challenged provision of P.R. Laws Ann. tit. 4, §

536(9)(b) is whether he was convicted of either child pornography possession or child pornography distribution. He acknowledges that he was convicted of the former. (Docket No. 1 at 31). Hence, "due process does not require the opportunity to prove a fact that is not material to the State's statutory scheme," and so Defendant is not entitled to a separate hearing. Connecticut Dep't, 538 U.S. at 4.

Because Plaintiff was classified correctly, not deprived of a protected interest, and given that he has not adequately pled the absence of constitutionally sufficient state remedies, the Court finds that Plaintiff does not state a viable procedural due process claim.

### V. CONCLUSION

For the foregoing reasons, Defendants' *Motion to Dismiss* at Docket No. 21 is hereby **GRANTED.** Plaintiff's *Complaint* is hereby **DISMISSED WITH PREJUDICE** in its entirety. Judgment of dismissal shall be entered accordingly.

**IT IS SO ORDERED.**

In San Juan Puerto Rico, this 12th day of December 2025.

S/ RAÚL M. ARIAS-MARXUACH
United States District Judge